# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Mitchell Boots, individually and on behalf
of the Proposed Rule 23 Class,

                                                 **CLASS ACTION COMPLAINT**

v.                                                **AND JURY TRIAL DEMAND**

Kona Sushi, Inc. d/b/a Kona Grill,

                 Defendant.                             Case No.17-cv-3401

---

        Plaintiff, on behalf of himself and the Proposed Rule 23(b)(2) and Rule 23(b)(3) Class as defined herein, by his attorney Robert R. Hopper, of Robert R. Hopper & Associates, LLC, brings the following action against Defendant seeking redress for Defendant's practice of unlawfully requiring, coercing, and participating in a gratuity/tip pooling scheme in violation of § 177.24 of the Minnesota Fair Labor Standards Act ("MFLSA"). Plaintiff and the Proposed Rule 23(b)(2) and Rule 23(b)(3) Class also seek redress for Defendant's practices which amount to conversion of servers' funds. This conversion arises from Defendant's scheme of improperly retaining a portion of server and bartender gratuities and by an artifice, which requires directly tipped employees to pay into a tip pool from their own personal cash property, for the benefit of other employees and Defendant. Plaintiff pleads on behalf of himself and the putative class members who are similarly situated, of both a Minnesota and a National Class, pursuant to proper venue and jurisdiction, and alleges as follows:

## PARTIES

1.      Defendant Kona Sushi, Inc., doing business as Kona Grill, ("Defendant") is a for-profit corporation with its principle place of business located at 7150 E. Camelback Road, #333, Scottsdale, Arizona 85251. Defendant's registered agent is Incorp Services, Inc., 901 Marquette Avenue, #1675, Minneapolis, MN 55402.

2.      Defendant owns and operates forty-five (45) restaurants in twenty-three (23) states and Puerto Rico.

3.      Two of Defendant's restaurants are located in Minnesota: one in the Windsor Plaza property in Eden Prairie, Minnesota, and a second in the Ridgedale Center property in Minnetonka, Minnesota[1].

4.      Plaintiff Mitchell Boots was employed by Defendant as a server and occasional bartender at its Eden Prairie location from August 2011 to April 2017.

5.      Plaintiff is an adult resident of Hennepin County, Minnesota.

## JURISDICTION AND VENUE

6.      This court has original jurisdiction over this matter under to 28 U.S.C. § 1332(d)(2) and Fed. R. Civ. P. 23(b)(3) because Plaintiff and Defendant are citizens of different states, because this matter is a class action, and because the amount in controversy in this matter, inclusive of reasonable attorney's fees and liquidated damages, exceeds $5,000,000.00.

---

[1] According to its 2016 Annual Report, Defendant opened its Eden Prairie location in 2009 and its Minnetonka location in 2016.

7.      This court has personal jurisdiction over this action because the Defendant is engaged in business within the State of Minnesota, and the action complained of occurred in Minnesota.

8.      Plaintiff invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate his state law claims.

9.      Venue is proper in the United State District Court of Minnesota under 28 U.S.C. § 1391 because Plaintiff worked for Defendant in this district, Defendant has a nexus with the state of Minnesota, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff Mitchell Boots and other class members similarly situated are current and former servers and bartenders at Defendant's Minnesota restaurants.

11.     Defendant is both an "employer" and a "large employer" as defined by the MFLSA as an enterprise with an annual gross dollar volume of sales transacted in the amount of $500,000.00 or more.

12.     Defendant's corporate headquarters is located in Scottsdale, Arizona and Defendant is likewise domiciled there.

13.     Defendant's primary business is selling food and beverages to its customers.

14.     In exchange for their waitstaff and bartending services, servers and bartenders at Defendant's restaurants receive gratuities from customers. Plaintiff and the

other class members in this case were employee servers and bartenders who were given such gratuities.

15.     Defendant provides and has provided servers, including Plaintiff and the other class members, with a W-2 form, for tax purposes.

16.     Customers of Defendant leave gratuities for its servers and bartenders using both cash and credit cards. The gratuities are in amounts in excess of the customers' bills. Plaintiffs and the other class members received such gratuities.

17.     Managers of Defendant, working for the benefit of Defendant, hire and fire employee servers and bartenders to work in its restaurants.

18.     Employee managers of Defendant, who are authorized to hire new employees, hired Plaintiff and the other class members.

19.     Since Defendant opened its first Minnesota location, at least one hundred individuals have been employed by Defendant at one or both of its Minnesota restaurants as servers or bartenders, or a combination of both.

20.     On information and belief, between two thousand (2,000) and five thousand (5,000) individuals have been employed by Defendant at its forty-five (45) locations across the United States and Puerto Rico.

21.     Defendant, through its employee managers, trains its servers and bartenders and supervises their conduct and attire while they are at work.

22.     Plaintiff and the other class members were trained and supervised by Defendant's employee managers while they were working.

## The Aloha POS System

23.     Throughout the class period and since as early as 2006[2], Defendant uses and has used a customized Aloha point-of-sale ("POS") computer system in its restaurants.

24.     The Aloha POS system can be customized to generate various reports for use by a restaurant.

25.     Defendant uses the Aloha POS system to, among other things, authorize, batch, and transmit credit card transactions, record employee time clock information, and produce a variety of management reports.

26.     Defendant also uses the Aloha POS system to track the individual sales made by servers and bartenders and the corresponding table or group of customers served.

27.     Among the customized reports available in the Aloha POS system is what the software refers to as "Tipshare" calculations. The "Tipshare" calculations can be arranged by an employer to generate "tip out" reports for individual servers or bartenders at the close of a shift, which is sometimes referred to as "check out."

28.     "Tip out" reports are used as part of a practice which is commonly referred to as "tip-pooling," whereby gratuities earned by a tipped employee are redistributed to other employees.

---

[2] Defendant's use of the Aloha POS system is confirmed in Defendant's Annual reports each year from 2006 to 2015. In 2016, Defendant's Annual Report does not reference "Aloha" by name, but nevertheless makes reference to its continued use of point-of-sale software. Defendant continued to use the same Aloha POS system while Plaintiff was employed there in 2016 and 2017.

29.     The "tip out" or "check out" reports generated by the Aloha POS system, and as used by Defendant, indicate an amount to be paid from the tips of a server or bartender to whichever customized category or categories the employer selects.

30.     Defendant, acting through its employees tasked with configuring its Aloha POS system for its restaurants, configures the Aloha POS system to create "Tipshare" reports for servers and bartenders such as Plaintiff and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

31.     Defendant has customized its Aloha POS system to develop these "Tipshare" reports to be printed at "tip out" or "check out" for its tipped employees, which include Plaintiff and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

32.     Throughout the class period, Defendant's practice has been, and continues to be, to require a "Tipshare" report to be run at the close of a server or bartender's shift.

33.     Defendant's Aloha POS system reports printed at the close of a server or bartender's shift also include information regarding the server or bartender's total sales for that shift, including food sales, liquor sales, and credit card gratuities.

34.     Defendant configures these reports to indicate "tip outs" to three groups, each group sometimes being referred to as "envelopes," which include and have included Defendant's server assistants, its sushi bar, and its alcohol bar.

35.     Defendant has customized its Aloha POS system to produce such reports to instruct its servers and bartenders to tip out a percentage of their tips to each of the "envelopes" based on a contrived mathematical formula chosen by Defendant.

36.     The "tip out" percentages were not chosen by Plaintiff or any other server or bartender employee(s) of Defendant. Defendant not only chooses the "envelopes" to which its servers and bartenders "tip out," but also the percentages of the "tip out" it applies to each "envelope" as part of its custom and practice of mandating, participating in, and coercing its server and bartender's cooperation with its tip pooling policy and practice.

### Defendant's Servers, Bartenders, and Server Assistants

37.     Defendant's servers and bartenders are "direct service employees," as defined by Minn. Admin. R. 5200.0080, subp. (6).

38.     Defendant lists its servers' responsibilities to include: (1) taking food and beverage orders from Defendant's customers, (2) entering customer orders quickly and in proper sequence, (3) serving food and beverages for Defendants' customers, (4) coordinating with the kitchen to ensure timely service and quality of the food, and (5) providing "the highest quality of service to the customer at all times."

39.     Defendant lists its bartenders responsibilities to include (1) preparing drinks for guests, (2) serving drinks in a professional and courteous manner, (3) preparing drinks for the dining room servers and cocktail servers upon request, and (4) waiting on tables in the designated bar area.

40.     Defendant's server assistants are "indirect service employees," as defined by Minn. Admin. R. 5200.0080, subp. (6).

41.     District courts at the federal and state level have repeatedly ruled that server assistants are, as a matter of law, indirect service employees, and that tip sharing

practices between direct service employees and service assistants, such as the Defendant's, constitute a violation of Minn. Stat. § 177.24, subd. 3. See *Huff v. Pinstripes, Inc.,* 972 F.Supp.2d 1065 (D. Minn. 2013); see also *Conlon v. Surly Brewing Company*, 27-CV-16-16-2517, 2017 WL _____, (July 12, 2017).

42.     Defendant structures its tip pool to include its server assistants in the tip out envelopes, even though server assistants are not direct service employees.

43.     Defendant's employee server assistants tasks include: (1) busing tables, (2) picking up food to fill orders entered by the servers, (3) changing light bulbs, (4) cleaning bathrooms, mopping and vacuuming floors, and (5) performing general set-up and take-down at the beginning and end of Defendant's service hours. Current open job listings for Server Assistant positions at Kona Grill's locations in Eden Prairie and Minnetonka include the following "Key Responsibilities:"

- "Supporting the service staff in the mission of outstanding guest service while ensuring good FOH cleanliness, executing quality food delivery in a timely fashion, assisting in the proper maintenance of tables / bussing of tables, and light cleaning.

- The SA's communication between the wait staff, kitchen, and management must be clear and direct as this position is the catch-all, to ensure that EVERY guest has a perfect Kona experience.

- The Server Assistant will also help maintain the restrooms[3]."

44.    Defendant's server assistants' occasional interaction with customers is not sufficient to render Defendant's server assistants direct employees. See *Delsing v. Starbucks Coffee Corp.*, 08-CV-1154 (PJS/JSM), 2009 WL 3202378, \*9 (D. Minn. Sept. 30, 2009)("[j]ust as a direct-service employee does not become an indirect service employee by doing a modest amount of indirect service (such as bussing a table), an indirect-service employee does not become a direct-service employee by doing a modest amount of direct service (such as refilling a coffee cup for a customer")).

45.    Defendant divides its server assistant shifts into morning and evening shifts, which do not correlate directly with server shifts. Accordingly, Defendant requires its servers and bartenders to "tip out" to server assistants who may not have assisted with service of the server's customer or may have only been scheduled for a small fraction of that server's shift. For example, a server assistant may be cut from his or her shift in the mid-afternoon, but the server or bartender who is required to tip out to that server assistant may continue to work until close, or even past close of business for that day.

46.    Defendant's tip-pooling scheme has not been initiated or instituted as a result of its employees requesting Defendant to institute a tip pool.

47.    Instead, Defendant's tip pooling system has been developed, determined, and implemented by Defendant's managers. Server and bartender cooperation in the tip pool is effectively mandatory, as a foregone conclusion.

---

[3] See Exhibits 1 and 2 attached hereto, which are true and correct copies of job listings posted by Defendant on its website for its Eden Prairie and Minnetonka locations, respectively, as displayed on July 21, 2017.

48.     Defendant's management, and not its servers and bartenders, also solely decide what percentage of Plaintiff and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class's tips are part of the tip pooling scheme and to whom those tips go.

49.     Defendant's use of the Aloha POS system allows Defendant, through its management and supervising employees, to coerce and effectively force server and bartender participation in its tip pool practice.

50.     Dating back to at least 2011, Defendant's employee managers, who are responsible for training in new servers and bartenders, train those employees to participate in the tip pool and do not indicate that participation is voluntary.

51.     Defendant does not and has not trained its new servers and bartenders and has not advised them that they may retain all of their earned gratuities, or that they may elect a different disbursement amount to their earned gratuities.

52.     On frequent occasions, servers and bartenders, including Plaintiff, have questioned the tip pooling practice and indicated they did not want to participate in the tip pool, even citing to Defendant's management that the tip pooling practices are illegal. In response, servers or bartenders are told that participation in the tip pool is part of "Kona Grill policy," and that therefore, they are required to participate.

53.     Defendant coerces, participates, and generally enforces its tip pooling practices in other ways. It is Defendant's management and supervising employees' practice that if a server or bartender fails or refuses to tip into the suggested "tip out" pool, the management or supervising employee scolds or lectures him or her. If a server continues to fail or refuse to participate in the tip pooling scheme, the management or

supervising employee schedules the server for fewer shifts, reducing the server or bartender's incentive to protest the tip pool.

54.     Once a server or bartender surrenders his or her tip money to Defendant's tip pool, he or she loses any direction or control over that money.

55.     Defendant has designed, instituted, organized, and continues to manage its tip pool in such a way that only Defendant knows exactly where, or to whom, a server's or bartender's tip money is disbursed. Should Defendant retain a portion of those gratuities for itself, Plaintiff and the other servers and bartenders do not have any practical way of knowing. Defendant operates its tip pooling in a clandestine and surreptitious manner to limit the ability of its servers and bartenders to account for the ultimate destination of their tip money.

56.     Defendant's participation in its tip pooling is illegal, is ongoing and operates for the benefit of Defendant.

57.     One of the known benefits to Defendant is that it allows Defendant's server assistants to be paid a higher rate of pay than the amount it must commit to its payroll, without inclusion of Plaintiff's gratuities, which are the property of Plaintiff. This system operates as a wage supplement paid by Plaintiff and members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

58.     As a result of Defendant's conduct, including but not limited to Defendant's requirement that servers contribute to a tip pool which benefits indirect service employees, Plaintiff and the members of the proposed class have been denied, and continue to be denied, the full value of the gratuities given to them by customers.

59.     Defendant is aware that Minnesota labor law does not permit tip pooling in this fashion, and has therefore knowingly violated, in the the least, Minnesota's statutory labor law. Nonetheless, employee servers and bartenders have repeatedly confronted Defendant's managers with the requirements and prohibitions of this law, and Defendant's managers have repeatedly responded by saying that despite the law, it is Kona Grill policy to enforce the tip pool.

60.     During the class period, Defendant's tip pooling practices have been, and continue to be, onerous, unfair, and ultimately punitive to servers and bartenders who wish to protect their well-established property interest in their tips.

## Conversion of Server and Bartender Tips

61.     At the close of a server or bartender's shift, the "tip out" or "check out" report generated by Defendant's Aloha POS system also indicates whether the server or bartender is owed cash by Defendant, or whether he or she owes cash to Defendant, based on the server's total sales and the amount of the server's credit card receipts for the shift.

62.     Importantly, Defendant's contrived mathematical formula used to determine the amounts a server or bartender is required to tip out to each envelope is based on the server or bartender's *sales*, not based on the gratuities that the bartender or server *actually receives* for the shift.

63.     Defendant requires that each server and each bartender operates as his or her own "bank"[4] during the course of the server's shift. This means, partly, that each server and bartender retains all the cash he or she receives from customers during the course of the shift.

64.     Defendant requires server or bartender employees to bring their own personal cash to function as the open sum for their "bank" for that particular shift.

65.     Defendant's "Tipshare" reports will effectively indicate whether the server or bartender is owed cash by the Defendant, or whether he or she owes cash to Defendant,as tender to the "tip out" envelopes, based on total sales and the amount of the server's credit card receipts for the evening.

66.     Because the "Tipshare" reports as customized by Defendant are not based on tips actually received by each server or bartender, but rather are based on sales – servers and bartenders may be forced to unlawfully contribute their own personal money to the tip pool to satisfy the "Tipshare" report's indicated "tip out" amounts.

67.     As noted in the foregoing, once a server or bartender surrenders his or her tip money to Defendant's tip pool, he or she loses any direction or control over that money. In fact, Defendant's surreptious design in instituting, organizing, and continuing to manage its tip pool is such that only Defendant knows exactly where or to whom a server's or bartender's tip money is disbursed. Should Defendant retain a portion of those gratuities for itself, Plaintiff and the other servers and bartenders do not have any

---

[4] Ostensibly, the practice of requiring server's and bartenders carry a "bank" on their person allows each server to maintain his/her own personal cash drawer without needing to have a traditional cash drawer carried from customer to customer.

practical way of knowing. This practice, at best, has stripped Plaintiff and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class from ownership and control over their tips; and, at worst, intentionally deprived them of their personal cash property.

68.     For example, if a server has one large table and serves that table through-out his or her time on the majority of his or her shift, but that table leaves no gratuity, Defendant's contrived mathematical system assumes the server received a large cash gratuity due to the large food and alcohol sales from the table, despite the fact that no such gratuity was actually paid to the server or bartender.

69.     In the above example, if a server's or bartender's suggested "tip out" is greater than the sum of the actual gratuities received by the server for that particular shift, the server or bartender's own money, brought to the shift by the server to open his or her "bank", will contribute to the employee's pay out into the suggested "tip out" envelopes.

70.     Defendant's restaurants calculate the movement of cash at the end of each shift, and therefore participate in coercing Plaintiff's cooperation with its illegal tip pooling custom.

## RULE 23(b)(2) AND RULE 23(b)(3) MINNESOTA CLASS ACTION ALLEGATIONS

71.     Plaintiff seeks certification of a class pursuant to Fed R. Civ. P. Rule 23(b)(2) and Rule 23(b)(3) because the primary relief sought is monetary damages for the putative class members resulting from Defendant's violation of Minn. Stat. 177.24, subd. 3 and/or the civil common law tort of conversion and equitable claim of unjust enrichment.

72.     In order to meet the requirements for class certification under Rule 23(b)(2) and Rule 23(b)(3), Rule 23(a) sets forth four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Accordingly, these pleadings meet all of the requirements set forth and pursuant to Fed. R. Civ. P. 23 (a) (1-4).

73.     The class is defined as all individuals who were employed as servers or bartenders by Defendant at Kona Grill restaurants in Minnesota, from three years prior to the date of service of the initial Complaint in this matter, until the date of final judgment in this matter.

74.     *Numerosity:* The individuals in the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiff believes that the class as defined above includes over 100 members based on the duration of the class claims, the fact of Defendant's two locations in Minnesota, the likelihood of turnover among servers and bartenders, and the likelihood that Defendant hires servers and bartenders on a seasonal basis.

75.     *Commonality/Predominance:* All members of the Class have been subject to and affected by the same conduct. There are questions of law and fact common to the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, and predominate over any questions affecting only individual members.  These questions include, but are not limited to:

a.     The nature and scope of Defendant's policies with regard to servers' and bartenders' gratuities at its Minnesota Kona Grill locations;

b.     Whether Defendant unlawfully coerced or participated in a tip pooling arrangement under which servers and bartenders contributed to a fund or pool operated for the benefit of other employees, including indirect service workers, in violation of Minn. Stat. § 177.24, subd. 3;

c.     Whether Defendant unlawfully coerced or participated in a tip pooling arrangement under which servers and bartenders contributed to a fund or pool operated for the benefit of Defendant;

d.     Whether Defendant's polices and practices for "tipping out" amounted to civil conversion of the personal property of Plaintiff and the Members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class.

e.     The proper measure of damages sustained by the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class.

76.     *Typicality:* Plaintiff's claims are typical of those in the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class. Plaintiff, like other members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, is similarly situated and has been denied his right to gratuities under Minnesota state labor law. Further, Defendant has converted his personal cash property, depriving him of the same, for Defendant's benefit. As a function of regular business management, and further as a function of Defendant's uniformly-used software applications as alleged herein, Defendant's practices regarding its servers and bartenders is uniform across its restaurants, and the practices alleged herein are likewise

16

typical across Defendant's business as affecting the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class.

77.    *Adequacy:*  Given Plaintiff's losses, Plaintiff has the incentive and is committed to prosecution of this action. Plaintiff has worked for Defendant as both a server and as a bartender, and likewise has suffered from Defendant's practices affecting both employee types. Plaintiff will fairly and adequately represent and protect and the interests of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class. Plaintiff is committed to the vigorous prosecution of the Classes' claims and have retained attorneys who are qualified[5] to pursue this litigation and have experience in class actions. Neither Plaintiff nor counsel have any interest adverse to those of Class members.

78.    This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class that would establish incompatible standards of conduct for Defendant. Such a class is also maintainable in the interest of judicial economy to preserve the court's precious resources, as intended by the reporters who drafted Rule 23.

79.    This action is also maintainable as a class action because questions or law and fact common to the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class predominate

---

[5] Class counsel, Robert R. Hopper, has over twenty–five years of experience in complex ligitaion and in the prosecution of class actions, including serving as co-lead counsel or liason counsel in many of the largest class actions during that time, such as such as the national tobacco litigation, major defective pharmaceutical and medical device litigation, antitrust litigation, financial and consumer fraud litigation, and environmental litigation. Mr. Hopper was also Lead Counsel in the Metro Gang Strike Force Litigation in Minnesota.

over any questions affecting only individual members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

80.     Plaintiff intends to send notice to all members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to the extent required by Rule 23 of the Rules of Civil Procedure.

## COUNT I.

## VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT

**Violation of Minn. Stat. §177.24.**
**(On Behalf of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3)**
**Minnesota Class)**

81.     Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class incorporate the above paragraphs by reference as if fully set forth herein.

82.     Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class were, or are, Defendant's employees within the meaning of Minnesota's Fair Labor Standards Act, specifically Minn. Stat. § 177.23 and Minn. Stat. §177.24.

83.     Defendant is, or was, the employer of the Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

84.     Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class received gratuities from Defendant's customers for personal services rendered within the meaning of Minn. Stat. § 177.24.

85. Defendant unlawfully required Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute or share a gratuity they received as an employee, with Defendant as their employer.

86. Defendant unlawfully required Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute any or all of a gratuity they received as employees, to a fund or pool operated for the benefit of the employer or other employees.

87. Defendant's conduct in violation of Minn. Stat. § 177.24 was willful, deliberate, and not the result of mistake or negligence.

88. Minn. Stat. § 177.24 states, in pertinent part:

"…any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property the employee. No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees."

89. Further, under Minn. Stat. § 177.24, any voluntary agreement between employees to share gratuities must be "without employer coercion or participation," with a few inapplicable exceptions.

90. By failing to treat Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class gratuities as property of the employees, Defendant violated Minn. Stat. § 177.24.

91. By requiring Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute and share gratuities they received with their employer or other employees, Defendant violated Minn. Stat. § 177.24.

92. As a direct result of Defendant's conduct, Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class were unjustly deprived of their rightful property.

93. Therefore, Defendant is liable pursuant to such violations of law as alleged herein.

## COUNT II.

## <u>CONVERSION</u>

**(As an Additional and Alternative Claim to Count I
on Behalf of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class)**

94. Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class incorporate the above paragraphs by reference as if fully set forth herein.

95. The Minnesota Supreme Court has defined the tort of conversion as:

"…an act of willful interference with [the personal property of another], done without lawful justification, by which any person entitled thereto is deprived of use and possession," and "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods."

*TCI Business Capital v. Five Star American Die*, 890 N.W.2d 423 (Minn. App. 2017)(internal citations omitted).

96.     Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class are server and bartender employees of Defendant.  These employees who are and who continue to be required by Defendant, through its pattern and practice of requiring direct service workers, to bring with them at the start of their work shift, a "bank," i.e. an amount of their own personal cash, to be used for Defendant's express purposes of "tipping out."

97.     As set forth above, Defendant's gratuity sharing practices and scheme required its direct server employees and bartenders to "tip out" through the electronic artifice of Defendant's software and thereby enforced them, through overt participation and coercion, to contribute this "tip out" to Defendant's tip pool.

98.     Because Defendant's practice of forcing "tip outs" is based on a percentage of the Plaintiff's sales, and not based on the actual tips received by the Plaintiff, Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class were required to pay an amount of money from their own personal cash, which is the tangible personal property of Plaintiff and the class, into the gratuity sharing pool that is created and controlled solely by Defendants.

99.     Defendants, having converted Plaintiff's personal cash as set forth above, redistributes the cash to its other employees as a means of subsidizing its payroll to those other employees and most likely, to itself.

100.     This claim is made alternatively *and in addition to* Count I because Defendant's tip pooling artifice operates as a mechanism to take the "bank" money that originates from the personal cash of Plaintiff and the Rule 23(b)(2) and Rule 23 (b)(3)

Minnesota Class, not just the gratuities received during the course of the shift. This money is not included in the pool of "gratuities" taken by Defendant's tip pool, but is a separate, distinct, and additional category of money (the server's or bartender's personal money) taken by Defendant.

101.     As a direct and proximate result of Defendant's conversion of the Plaintiff's personal cash as set forth above, Defendants have caused Plaintiff and the Class to lose great sums of money and are therefore liable to Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class for damages.

## COUNT III.

## <u>UNJUST ENRICHMENT</u>

**(As an Alternative Claim to Counts I and II
on Behalf of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class)**

102.     Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class incorporate the above paragraphs by reference as if fully set forth herein.

103.     Claims for unjust enrichment have two elements: (1) the defendant knowingly receives a benefit from the plaintiff, and (2) under the circumstances, it would be unjust to permit the defendant to retain the benefit. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.* 544 N.W.2d 302, 306 (Minn. 1996).

104.     As set forth above, Defendant's gratuity sharing practices involve a suggested "tip out" provided by Defendant's software and enforced, through participation and coercion, by Defendant's supervisors and management.

105.     Because Defendant's practice of forcing "tip outs" is based on a percentage of the sales of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, and not based on the actual tips received by the Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, Plaintiff and the members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class are required to pay amounts of money from their own personal cash, the tangible personal property of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, into the gratuity sharing pool created and possessed by Defendant.

106.     Defendant's gratuity sharing practices, as outlined above, confer upon itself a substantial benefit: namely, the use of the own personal cash of Plaintiff and the other class members, as (1) a subsidy of Defendant and (2) payment of wage obligations to Defendant's other employees.  Allowing Defendant to continue to retain this benefit would be unjust.

107.     As a direct and proximate result of this inequitable and illegal allocation, Defendant has been and continues to be unjustly enriched at the expense of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, and is liable to Plaintiff.

## RULE 23(B)(2) AND RULE 23(b)(3) NATIONAL CLASS ALLEGATIONS

108.     Plaintiff seeks certification of a class pursuant to Rule 23(b)(2) and Rule 23(b)(3) because the primary relief sought is monetary damages for the putative class members resulting from Defendant's violation of the common law tort of conversion and an equitable claim of unjust enrichment.

109.     Accordingly, these pleadings meet all of the requirements set forth and pursuant to Fed. R. Civ. P. 23 (a) (1-4).

110.     In order to meet the requirements for class certification, Rule 23(a) sets forth four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Accordingly, these pleadings meet all of the requirements set forth and pursuant to Fed. R. Civ. P. 23 (a) (1-4).

111.     The class is defined as all individuals who were employed as servers or bartenders by Defendant at all Kona Grill restaurants, except those located in Minnesota, from three years prior to the date of service of the initial Complaint in this matter, until the date of final judgment in this matter.

112.     *Numerosity:* The individuals in the Rule 23(b)(2) and Rule 23(b)(3) National Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiff believes that the class as defined above includes over 100 members based on the duration of the class claims, the fact of Defendant's twenty three (23) locations in forty-five (45) states and Puerto Rico, the likelihood of turnover among servers and bartenders, and the likelihood that Defendant hires servers and bartenders on a seasonal basis.

113.     *Commonality/Predominance:* All members of the national class have been subject to and affected by the same conduct. There are questions of law and fact common

to the Rule 23(b)(2) and Rule 23(b)(3) National Class, and predominate over any questions affecting only individual members.  These questions include, but are not limited to:

    a.    The nature and scope of Defendant's policies with regard to servers' and bartenders' gratuities at its Kona Grill locations;

    b.    Whether Defendant unlawfully coerced and required participation in a tip pooling scheme under which servers and bartenders contributed to a fund or pool operated for the benefit of Defendant, causing Plaintiff and the Members of the Rule 23(b)(2) and Rule 23(b)(3) National Class to be deprived of the use and possession of their personal cash property;

    c.    Whether Defendant's polices and practices for "tipping out" amounted to civil conversion of the personal property of Plaintiff and the Members of the Rule 23(b)(2) and Rule 23(b)(3) National Class; and,

    d.    The proper measure of damages sustained by the Rule 23(b)(2) and Rule 23(b)(3) National  Class.

114.   *Typicality:* Plaintiff's claims are typical of those in the Rule 23(b)(2) and Rule 23(b)(3) National Class. Plaintiff, like other members of the Rule 23(b)(2) and Rule 23(b)(3) National Class similarly situated, has been deprived of the ownership and control over his personal cash property by the deliberate actions of Defendant. Defendant has converted his personal cash property, depriving him of the same, for Defendant's benefit. As a function of regular business management, and further as function of its uniformly-used software applications as alleged herein, Defendant's practices regarding

its servers and bartenders is uniform across its restaurants, and the practices alleged herein are likewise typical across Defendant's business as affecting the Rule 23(b)(2) and Rule 23(b)(3) National Class.

115. *Adequacy:* Given Plaintiff's losses, Plaintiff has the incentive and is committed to prosecution of this action. Plaintiff has worked for Defendant as both a server and as a bartender, and likewise has suffered from Defendant's practices affecting both employee types. Plaintiff will fairly and adequately represent and protect the interests of the Rule 23(b)(2) and Rule 23(b)(3) National Class. Plaintiff is committed to the vigorous prosecution of the Classes' claims and have retained attorneys who are qualified (see Footnote 5, supra) to pursue this litigation and have experience in class actions. Neither Plaintiff nor counsel have any interest adverse to those of Class members.

116. This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23 National Class that would establish incompatible standards of conduct for Defendant. Such a class is also maintainable in the interest of judicial economy to preserve the court's precious resources, as intended by the reporters who drafted Rule 23.

117. This action is maintainable as a class action because questions or law and fact common to the Rule 23(b)(2) and Rule 23(b)(3) National Class predominate over any questions affecting only individual members of the Rule 23(b)(2) and Rule 23(b)(3)

National Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

118.    Plaintiff intends to send notice to all members of the Rule 23(b)(2) and Rule 23(b)(3) National Class to the extent required by Rule 23 of the Rules of Civil Procedure.

119.    This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect o individual members of the Rule 23 National Class that would establish incompatible standards of conduct for Defendant. Such a class is also maintainable in the interest of judicial economy to preserve the court's precious resources, as intended by the reporters who drafted Rule 23.

120.    This action is maintainable as a class action because questions or law and fact common to the Rule 23 National Class predominate over any questions affecting only individual members of the Rule 23 National Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

121.    Plaintiffs intend to send notice to all members of the Rule 23 National Class to the extent required by Rule 23.03 of the Rules of Civil Procedure.

## COUNT IV.

## <u>CONVERSION</u>

### (On behalf of Plaintiff and the National Class)

122.    Plaintiffs and the National Class incorporate the preceding paragraphs by reference.

123.    At common law, a conversion is generally committed by intentionally dispossessing another of a chattel. See Restatement (Second) of Torts § 223.

124.    The Minnesota Supreme Court, having common law typical of the cross-state definitions of conversion, has defined the tort of conversion as:

> "…an act of willful interference with [the personal property of another], done without lawful justification, by which any person entitled thereto is deprived of use and possession," and "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods."

*TCI Business Capital v. Five Star American Die*, 890 N.W.2d 423 (Minn. App. 2017)(internal citations omitted).

125.    Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) National Class are server and bartender employees of Defendant.  These employees who are and who continue to be required by Defendant, through its pattern and practice of requiring direct service workers, to bring with them at the start of their work shift, a "bank," i.e. an amount of their own personal cash, to be used for Defendant's express purposes of "tipping out."

126.    As set forth above, Defendant's gratuity sharing practices and scheme requires its direct server employees and bartenders to "tip out" through the electronic artifice of Defendant's software and thereby forces them, through overt participation and coercion, to contribute this "tip out" to Defendant's tip pool.

127.    Because Defendant's practice of forcing "tip outs" is based on a percentage of the Plaintiff's sales, and not based on the actual tips received by the Plaintiff, Plaintiff

and the National Class were required to pay amounts of money from their own personal cash, the tangible personal property of Plaintiff and the class, into the gratuity sharing pool created and controlled solely by Defendants.

128.    Defendants, having converted Plaintiff's personal cash as set forth above, redistributes the cash to its other employees as a means of subsidizing its payroll to those other employees and most likely, to itself.

129.    This claim is made in addition to Count I because Defendant's tip pooling artifice operates as a mechanism to take the "bank" money that originates from Plaintiff's personal cash. This money is not included in the pool of "gratuities" taken by Defendant's tip pool, but is a separate and additional class of money taken by Defendant.

130.    This claim is also made alternatively, because Plaintiffs and the members of the Rule 23(b)(2) and Rule 23(b)(3) National Class have an established property interest in their gratuities, and Defendant's overt acts to exercise dominion over the funds, which are specific and identifiable, for the purpose of converting those gratuities to the Defendant's own use; namely, the subsidized payment to Defendant's other employees.

131.    As a direct and proximate result of Defendant's conversion of the Plaintiff's personal cash as set forth above, Defendants have caused Plaintiff and the members of the Rule 23(b)(2) and Rule 23(b)(3) National Class to lose great sums of money in an amount to be more specifically proven at trial and are therefore liable to Plaintiff and the members of the Rule 23(b)(2) and Rule 23(b)(3) National Class.

## COUNT V.

## UNJUST ENRICHMENT

### (As an Alternative Claim to Count IV

### on Behalf of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) National Class)

132.    Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) National Class incorporate the above paragraphs by reference as if fully set forth herein.

133.    At common law, a person who is unjustly enriched at the expense of another is subject to liability in restitution. See Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011).

134.    Minnesota courts have also effectively summarized the elements of a claim for unjust enrichment: (1) the defendant knowingly receives a benefit from the plaintiff, and (2) under the circumstances, it would be unjust to permit the defendant to retain the benefit. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.* 544 N.W.2d 302, 306 (Minn. 1996).

135.    As set forth above, Defendant's gratuity sharing practices involve a "tip out" provided by Defendant's software and enforced, through participation and coercion, by Defendant's supervisors and management.

136.    Because Defendant's practice of enforcing "tip outs" through participation and coercion is based on a percentage of the sales of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) National Class, and not based on their actual tips received, Plaintiff and the members of the Rule 23(b)(2) and Rule 23(b)(3) National Class are and continue to be

required to pay amounts of money from their own personal cash, their own tangible personal property, into the gratuity sharing pool created and possessed by Defendant.

137.    Defendant's gratuity sharing policies and practices, as outlined above, confer upon itself a substantial benefit: namely, the use of the own personal cash of Plaintiff and the other class members as a subsidy of Defendant, payment of wage obligations to Defendant's other workers.  Allowing Defendant to continue to retain this benefit would be unjust.

138.    Defendant's gratuity sharing practices, as outlined above, confer upon itself a substantial benefit: namely, the use of the own personal cash of Plaintiff and the other class members, as (1) a subsidy of Defendant and (2) payment of wage obligations to Defendant's other employees.  Allowing Defendant to continue to retain this benefit would be unjust.

139.    As a direct and proximate result of this inequitable and illegal allocation, Defendant has been unjustly enriched at the expense of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) National Class, and is liable to Plaintiff the amount of damages to be more specifically proven at trial.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

1.     For class certification of both the Rule 23(b)(2) and Rule 23(b)(3) Minnesota and National Classes and designation of Plaintiffs as class representative and their counsel as competent class counsel;

2.     That the conduct of Defendant as described herein and relating to Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to be determined and adjudicated to be in violation of the Minnesota Fair Labor Standards Act, specifically Minn. Stat. § 177.24, subd. 3;

3.     That the conduct of Defendant as described herein and relating to the Rule 23(b)(2) and Rule 23(b)(3) Minnesota and National Classes to be determined and adjudicated to be liable under the common law tort of conversion; or, alternatively, liable under the equitable claim of unjust enrichment.

4.     For damages in the amount of Plaintiff's and each member of the Rule 23 Minnesota Class's unlawfully diverted gratuities, plus an additional equal amount as liquidated damages, all costs, disbursements, witness fees, and reasonable attorney's fees incurred in the prosecution of this claim, for all available civil penalties, and all other legal and equitable relief available pursuant to Plaintiff's claims;

5.     For damages in the amount of Plaintiff's and each member of the Rule 23 Minnesota and National Class personal cash property converted by Defendant and for the unjust enrichment of Defendant;

6.     For leave to amend to allege punitive damages;

7.     Any pre and post judgment interest applicable;

8.     For all such further relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Date:

_____
Robert R. Hopper, Esq. (#208769)
Matthew L. McMullen, Esq. (#393270)
**ROBERT R. HOPPER & ASSOCIATES, LLC**
333 South 7th Street, Suite 2450
Minneapolis, MN 55402
T: (612) 455-2199
F: (612) 455-1689
E:Robert.hopper@robertrhopper.com
***Attorneys for Plaintiff***