## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Mitchell Boots, Tracy Fortman, individually and on behalf
of the Proposed Rule 23 Class,

        Plaintiffs,

                                  **CLASS ACTION COMPLAINT**

v.                                    **AND JURY TRIAL DEMAND**

Kona Sushi, Inc. d/b/a Kona Grill,

        Defendant.                    Case No.17-cv-3401

---

Plaintiffs, on behalf of themselves and the Proposed Rule 23(b)(2) and Rule 23(b)(3) Class as defined herein, through their attorney Robert R. Hopper, of Robert R. Hopper & Associates, LLC, bring the following action against Defendant seeking redress for Defendant's practice of unlawfully requiring, coercing, and participating in a gratuity/tip pooling scheme in violation of § 177.24 of the Minnesota Fair Labor Standards Act ("MFLSA"). Plaintiffs plead on behalf of themselves and the putative class members who are similarly situated, pursuant to proper venue and jurisdiction, and alleges as follows:

### PARTIES

1.     Defendant Kona Sushi, Inc., doing business as Kona Grill, ("Defendant") is a for-profit corporation with its principle place of business located at 7150 E. Camelback Road, #333, Scottsdale, Arizona 85251. Defendant's registered agent is Incorp Services, Inc., 901 Marquette Avenue, #1675, Minneapolis, MN 55402.

2.      Defendant owns and operates forty-five (45) restaurants in twenty-three (23) states and Puerto Rico.

3.      Two of Defendant's restaurants are located in Minnesota: one in the Windsor Plaza property in Eden Prairie, Minnesota, and a second in the Ridgedale Center property in Minnetonka, Minnesota[1].

4.      Plaintiff Mitchell Boots was employed by Defendant as a server and occasional bartender at its Eden Prairie location from August 2011 to April 2017.

5.      Plaintiff Tracy Fortman has been employed by Defendant as a server at its Eden Prairie location since December 2011.

6.      Both Plaintiffs are adult residents of Hennepin County, Minnesota.

## JURISDICTION AND VENUE

7.      This court has original jurisdiction over this matter under to 28 U.S.C. § 1332(d)(2) and Fed. R. Civ. P. 23(b)(3) because Plaintiff and Defendant are citizens of different states, because this matter is a class action, and because the amount in controversy in this matter, inclusive of reasonable attorney's fees and liquidated damages, exceeds $5,000,000.00.

8.      This court has personal jurisdiction over this action because the Defendant is engaged in business within the State of Minnesota, and the action complained of occurred in Minnesota.

---

[1] According to its 2016 Annual Report, Defendant opened its Eden Prairie location in 2009 and its Minnetonka location in 2016.

9. Plaintiffs invoke the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate his state law claims.

10. Venue is proper in the United State District Court of Minnesota under 28 U.S.C. § 1391 because Plaintiffs worked for Defendant in this district, Defendant has a nexus with the state of Minnesota, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## GENERAL FACTUAL ALLEGATIONS

11. Plaintiffs Mitchell Boots, Tracy Fortman, and the other class members similarly situated are current and former servers and bartenders at Defendant's Minnesota restaurants.

12. Defendant is both an "employer" and a "large employer" as defined by the MFLSA as an enterprise with an annual gross dollar volume of sales transacted in the amount of $500,000.00 or more.

13. Defendant's corporate headquarters is located in Scottsdale, Arizona and Defendant is likewise domiciled there.

14. Defendant's primary business is selling food and beverages to its customers.

15. In exchange for their waitstaff and bartending services, servers and bartenders at Defendant's restaurants receive gratuities from customers. Plaintiffs and the other class members in this case were employee servers and bartenders who were given such gratuities.

16.    Defendant provides and has provided servers, including Plaintiffs and the other class members, with a W-2 form, for tax purposes.

17.    Customers of Defendant leave gratuities for its servers and bartenders using both cash and credit cards. The gratuities are in amounts in excess of the customers' bills. Plaintiffs and the other class members received such gratuities.

18.    Managers who are employed by Defendant, and who work for the benefit of Defendant, hire and fire employee servers and bartenders to work in Defendant's restaurants.

19.    Employee managers of Defendant, who are authorized to hire new employees, hired Plaintiff and the other class members.

20.    Since Defendant opened its first Minnesota location, at least one hundred individuals have been employed by Defendant at one or both of its Minnesota restaurants as servers or bartenders, or a combination of both.

21.    Defendant, through its employee managers, trains its servers and bartenders and supervises their conduct and attire while they are at work.

22.    Plaintiffs and the other class members were trained and supervised by Defendant's employee managers while they were working at the two Minnesota Kona Grill restaurants.

## The Aloha POS System

23.     Throughout the class period and since as early as 2006[2], Defendant uses and has used a customized Aloha point-of-sale ("POS") computer system in its restaurants.

24.     The Aloha POS system can be customized to generate various reports for use by a restaurant.

25.     Defendant uses the Aloha POS system to, among other things, authorize, batch, and transmit credit card transactions, record employee time clock information, and produce a variety of management reports.

26.     Defendant also uses the Aloha POS system to track the individual sales made by servers and bartenders and the corresponding table or group of customers served.

27.     Among the customized reports available in the Aloha POS system is what the software refers to as "Tipshare" calculations. The "Tipshare" calculations can be arranged by an employer to generate "tip out" reports for individual servers or bartenders at the close of a shift, which is sometimes referred to as "check out."

28.     "Tip out" reports are used as part of a practice which is commonly referred to as "tip-pooling," whereby gratuities earned by a tipped employee are redistributed to other employees.

---

[2] Defendant's use of the Aloha POS system is confirmed in Defendant's Annual reports each year from 2006 to 2015. In 2016, Defendant's Annual Report does not reference "Aloha" by name, but nevertheless makes reference to its continued use of point-of-sale software. Defendant continued to use the same Aloha POS system while Plaintiffs were employed there in 2016 and 2017.

29.     The "tip out" or "check out" reports generated by the Aloha POS system, and as used by Defendant, indicate an amount to be paid from the tips of a server or bartender to whichever customized category or categories the employer selects.

30.     Defendant, acting through its employees tasked with configuring its Aloha POS system for its restaurants, configures the Aloha POS system to create "Tipshare" reports for servers and bartenders such as Plaintiffs and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

31.     Defendant has customized its Aloha POS system to develop these "Tipshare" reports to be printed at "tip out" or "check out" for its tipped employees, which include Plaintiffs and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

32.     Throughout the class period, Defendant's practice has been, and continues to be, to require a "Tipshare" report to be run at the close of a server or bartender's shift.

33.     Defendant's Aloha POS system reports that are printed at the close of a server or bartender's shift also include information regarding the server or bartender's total sales for that shift, including food sales, liquor sales, and credit card gratuities.

34.     Defendant configures these reports to indicate "tip outs" to three groups. Each group, sometimes being referred to as "envelopes," includes and has included Defendant's server assistants, its sushi bar, and its alcohol bar.

35.     Defendant has customized its Aloha POS system to produce such reports to instruct its servers and bartenders to tip out a percentage of their tips to each of the "envelopes" based on a contrived mathematical formula chosen by Defendant.

36.     The "tip out" percentages were not chosen by Plaintiffs or any other server

or bartender employee(s) of Defendant. Defendant not only chooses the "envelopes" to

which its servers and bartenders "tip out," but also the percentages of the "tip out" it

applies to each "envelope" as part of its custom and practice of mandating, participating

in, and coercing its server and bartender's cooperation with its tip pooling policy and

practice.

### Defendant's Servers, Bartenders, and Server Assistants

37.     Defendant's servers and bartenders are "direct service employees," as

defined by Minn. Admin. R. 5200.0080, subp. (6).

38.     Defendant lists its servers' responsibilities to include: (1) taking food and

beverage orders from Defendant's customers, (2) entering customer orders quickly and in

proper sequence, (3) serving food and beverages for Defendants' customers, (4)

coordinating with the kitchen to ensure timely service and quality of the food, and (5)

providing "the highest quality of service to the customer at all times."

39.     Defendant lists its bartenders responsibilities to include (1) preparing drinks

for guests, (2) serving drinks in a professional and courteous manner, (3) preparing drinks

for the dining room servers and cocktail servers upon request, and (4) waiting on tables in

the designated bar area.

40.     Defendant's server assistants are "indirect service employees," as defined

by Minn. Admin. R. 5200.0080, subp. (6).

41.     District courts at the federal and state level have repeatedly ruled that server

assistants are, as a matter of law, indirect service employees, and that tip sharing

practices between direct service employees and service assistants, such as the Defendant's, constitute a violation of Minn. Stat. § 177.24, subd. 3. See *Huff v. Pinstripes, Inc.,* 972 F.Supp.2d 1065 (D. Minn. 2013); see also *Conlon v. Surly Brewing Company*, 27-CV-16-16-2517, 2017 WL _____, (July 12, 2017).

42.    Defendant structures its tip pool to include its server assistants in the tip out envelopes, even though server assistants are not direct service employees.

43.    Defendant's employee server assistants tasks include: (1) busing tables, (2) picking up food to fill orders entered by the servers, (3) changing light bulbs, (4) cleaning bathrooms, mopping and vacuuming floors, and (5) performing general set-up and take-down at the beginning and end of Defendant's service hours. Current open job listings for Server Assistant positions at Kona Grill's locations in Eden Prairie and Minnetonka include the following "Key Responsibilities:"

- "Supporting the service staff in the mission of outstanding guest service while ensuring good FOH cleanliness, executing quality food delivery in a timely fashion, assisting in the proper maintenance of tables / bussing of tables, and light cleaning.

- The SA's communication between the wait staff, kitchen, and management must be clear and direct as this position is the catch-all, to ensure that EVERY guest has a perfect Kona experience.

- The Server Assistant will also help maintain the restrooms[3]."

44.     Defendant's server assistants' occasional interaction with customers is not sufficient to render Defendant's server assistants direct employees. See *Delsing v. Starbucks Coffee Corp.*, 08-CV-1154 (PJS/JSM), 2009 WL 3202378, *9 (D. Minn. Sept. 30, 2009)("[j]ust as a direct-service employee does not become an indirect service employee by doing a modest amount of indirect service (such as bussing a table), an indirect-service employee does not become a direct-service employee by doing a modest amount of direct service (such as refilling a coffee cup for a customer").

45.     Defendant divides its server assistant shifts into morning and evening shifts, which do not correlate directly with server shifts. Accordingly, Defendant requires its servers and bartenders to "tip out" to server assistants who may not have assisted with service of the server's customer or may have only been scheduled for a small fraction of that server's shift. For example, a server assistant may be cut from his or her shift in the mid-afternoon, but the server or bartender who is required to tip out to that server assistant may continue to work until close, or even past close of business for that day.

46.     Defendant's tip-pooling scheme has not been initiated or instituted as a result of its employees requesting Defendant to institute a tip pool.

47.     Instead, Defendant's tip pooling system has been developed, determined, and implemented by Defendant's managers. Server and bartender cooperation in the tip pool is effectively mandatory, as a foregone conclusion.

---

[3] See Exhibits 1 and 2 attached hereto, which are true and correct copies of job listings posted by Defendant on its website for its Eden Prairie and Minnetonka locations, respectively, as displayed on July 21, 2017.

48.     Defendant's management, and not its servers and bartenders, also solely decide what percentage of Plaintiff and the other members of the Rule 23(b)(2) and Rule 23(b)(3) Class's tips are part of the tip pooling scheme and to whom those tips go.

49.     Defendant's use of the Aloha POS system allows Defendant, through its management and supervising employees, to coerce and effectively force server and bartender participation in its tip pool practice.

50.     Dating back to at least 2011, Defendant's employee managers, who are responsible for training in new servers and bartenders, train those employees to participate in the tip pool and do not indicate that participation is voluntary.

51.     Defendant does not and has not trained its new servers and bartenders and has not advised them that they may retain all of their earned gratuities, or that they may elect a different disbursement amount to their earned gratuities.

52.     On frequent occasions, servers and bartenders, including Plaintiffs, have questioned the tip pooling practice and indicated they did not want to participate in the tip pool, even citing to Defendant's management that the tip pooling practices are illegal. In response, servers or bartenders are told that participation in the tip pool is part of "Kona Grill policy," and that therefore, they are required to participate.

53.     Defendant coerces, participates, and generally enforces its tip pooling practices in other ways. It is Defendant's management and supervising employees' practice that if a server or bartender fails or refuses to tip into the suggested "tip out" pool, the management or supervising employee scolds or lectures him or her. If a server continues to fail or refuse to participate in the tip pooling scheme, the management or

supervising employee schedules the server for fewer shifts, reducing the server or bartender's incentive to protest the illegal tip pool.

54.     Once a server or bartender surrenders his or her tip money to Defendant's tip pool, he or she loses any direction or control over that money.

55.     Defendant has designed, instituted, organized, and continues to manage its tip pool in such a way that only Defendant knows exactly where, or to whom, a server's or bartender's tip money is disbursed. Should Defendant retain a portion of those gratuities for itself, Plaintiffs and the other servers and bartenders do not have any practical way of knowing. Defendant operates its tip pooling in a clandestine and surreptitious manner to limit the ability of its servers and bartenders to account for the ultimate destination of their tip money.

56.     Defendant's participation in its tip pooling is illegal, is ongoing and operates for the benefit of Defendant.

57.     One of the known benefits to Defendant is that it allows Defendant's server assistants to be paid a higher rate of pay than the amount it must commit to its payroll, without inclusion of Plaintiffs' gratuities, which are the property of Plaintiffs. This system operates as a wage supplement paid by Plaintiffs and members of the Rule 23(b)(2) and Rule 23(b)(3) Class.

58.     As a result of Defendant's conduct, including but not limited to Defendant's requirement that servers contribute to a tip pool which benefits indirect service employees, Plaintiffs and the members of the proposed class have been denied, and continue to be denied, the full value of the gratuities given to them by customers.

59.     Defendant is aware that Minnesota labor law does not permit tip pooling in this fashion, and has therefore knowingly violated, in the the least, Minnesota's statutory labor law. Nonetheless, employee servers and bartenders have repeatedly confronted Defendant's managers with the requirements and prohibitions of this law, and Defendant's managers have repeatedly responded by saying that despite the law, it is Kona Grill policy to enforce the tip pool.

60.     During the class period, Defendant's tip pooling practices have been, and continue to be, onerous, unfair, and ultimately punitive to servers and bartenders who wish to protect their well-established property interest in their tips.

## RULE 23(b)(2) AND RULE 23(b)(3) MINNESOTA CLASS ACTION ALLEGATIONS

61.     Plaintiffs seek certification of a class pursuant to Fed R. Civ. P. Rule 23(b)(2) and Rule 23(b)(3) because the primary relief sought is monetary damages for the putative class members resulting from Defendant's violation of Minn. Stat. 177.24, subd. 3.

62.     In order to meet the requirements for class certification under Rule 23(b)(2) and Rule 23(b)(3), Rule 23(a) sets forth four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Accordingly, these pleadings meet all of the requirements set forth and pursuant to Fed. R. Civ. P. 23 (a) (1-4).

63.     The class is defined as all individuals who were employed as servers or bartenders by Defendant at Kona Grill restaurants in Minnesota, from three years prior to the date of service of the initial Complaint in this matter, until the date of final judgment in this matter.

64.     *Numerosity:* The individuals in the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiffs believe that the class as defined above includes over 100 members based on the duration of the class claims, the fact of Defendant's two locations in Minnesota, the likelihood of turnover among servers and bartenders, and the likelihood that Defendant hires servers and bartenders on a seasonal basis.

65.     *Commonality/Predominance:* All members of the Class have been subject to and affected by the same conduct. There are questions of law and fact common to the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class, and predominate over any questions affecting only individual members.  These questions include, but are not limited to:

a.      The nature and scope of Defendant's policies with regard to servers' and bartenders' gratuities at its Minnesota Kona Grill locations;

b.      Whether Defendant unlawfully coerced or participated in a tip pooling arrangement under which servers and bartenders contributed to a fund or pool operated for the benefit of other employees, including indirect service workers, in violation of Minn. Stat. § 177.24, subd. 3;

c.      Whether Defendant unlawfully coerced or participated in a tip pooling

arrangement under which servers and bartenders contributed to a fund or

pool operated for the benefit of Defendant;

d.      'The proper measure of damages sustained by the Rule 23(b)(2) and Rule

23(b)(3) Minnesota Class.

66.     *Typicality:* Plaintiff's claims are typical of those in the Rule 23(b)(2) and

Rule 23(b)(3) Minnesota Class. Plaintiff, like other members of the Rule 23(b)(2) and

Rule 23(b)(3) Minnesota Class, is similarly situated and has been denied his right to

gratuities under Minnesota state labor law. Further, Defendant has converted his personal

cash property, depriving him of the same, for Defendant's benefit. As a function of

regular business management, and further as a function of Defendant's uniformly-used

software applications as alleged herein, Defendant's practices regarding its servers and

bartenders is uniform across its restaurants, and the practices alleged herein are likewise

typical across Defendant's business as affecting the Rule 23(b)(2) and Rule 23(b)(3)

Minnesota Class.

67.     *Adequacy:*  Given Plaintiff's losses, Plaintiffs have the incentive and is

committed to prosecution of this action. Plaintiffs have worked for Defendant as both

servers and as a bartender, in the case of Plaintiff Boots, and likewise has suffered from

Defendant's practices affecting both employee types. Plaintiffs will fairly and adequately

represent and protect and the interests of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota

Class. Plaintiffs are committed to the vigorous prosecution of the Classes' claims and

have retained attorneys who are qualified[5] to pursue this litigation and have experience in class actions. Neither Plaintiffs nor counsel have any interest adverse to those of Class members.

68.    This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class that would establish incompatible standards of conduct for Defendant. Such a class is also maintainable in the interest of judicial economy to preserve the court's precious resources, as intended by the reporters who drafted Rule 23.

69.    This action is also maintainable as a class action because questions or law and fact common to the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class predominate over any questions affecting only individual members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

70.    Plaintiffs intend to send notice to all members of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to the extent required by Rule 23 of the Rules of Civil Procedure.

---

[5] Class counsel, Robert R. Hopper, has over twenty–five years of experience in complex ligitaion and in the prosecution of class actions, including serving as co-lead counsel or liason counsel in many of the largest class actions during that time, such as such as the national tobacco litigation, major defective pharmaceutical and medical device litigation, antitrust litigation, financial and consumer fraud litigation, and environmental litigation. Mr. Hopper was also Lead Counsel in the Metro Gang Strike Force Litigation in Minnesota.

## COUNT I.

## <u>VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT</u>

**Violation of Minn. Stat. §177.24.**
**(On Behalf of Plaintiff and the Rule 23(b)(2) and Rule 23(b)(3)**
**Minnesota Class)**

71.    Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class incorporate the above paragraphs by reference as if fully set forth herein.

72.    Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class were, or are, Defendant's employees within the meaning of Minnesota's Fair Labor Standards Act, specifically Minn. Stat. § 177.23 and Minn. Stat. §177.24.

73.    Defendant is, or was, the employer of the Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

74.    Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class received gratuities from Defendant's customers for personal services rendered within the meaning of Minn. Stat. § 177.24.

75.    Defendant unlawfully required Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute or share a gratuity they received as an employee, with Defendant as their employer.

76.    Defendant unlawfully required Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute any or all of a gratuity they received as employees, to a fund or pool operated for the benefit of the employer or other employees.

77.    Defendant's conduct in violation of Minn. Stat. § 177.24 was willful, deliberate, and not the result of mistake or negligence.

78.    Minn. Stat. § 177.24 states, in pertinent part:

"…any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property the employee. No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees."

79.    Further, under Minn. Stat. § 177.24, any voluntary agreement between employees to share gratuities must be "without employer coercion or participation," *see Burt v. Rackner, Inc.*, __ N.W.2d ___, 2017 WL 4532933 at *2 (Minn. 2017), with a few inapplicable exceptions.

80.    By failing to treat Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class gratuities as property of the employees, Defendant violated Minn. Stat. § 177.24.

81.    By requiring Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to contribute and share gratuities they received with their employer or other employees, Defendant violated Minn. Stat. § 177.24.

82.    Therefore, Defendant is liable pursuant to such violations of law as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

1.      For class certification of the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class and designation of Plaintiffs as class representative and their counsel as competent class counsel;

2.      That the conduct of Defendant as described herein and relating to Plaintiffs and the Rule 23(b)(2) and Rule 23(b)(3) Minnesota Class to be determined and adjudicated to be in violation of the Minnesota Fair Labor Standards Act, specifically Minn. Stat. § 177.24, subd. 3;

3.      For damages in the amount of Plaintiffs' and each member of the Rule 23 Minnesota Class's unlawfully diverted gratuities, plus an additional equal amount as liquidated damages, all costs, disbursements, witness fees, and reasonable attorney's fees incurred in the prosecution of this claim, for all available civil penalties, and all other legal and equitable relief available pursuant to Plaintiffs' claims;

4.      For leave to amend to allege punitive damages;

5.      Any pre and post judgment interest applicable;

For all such further relief as this Court deems just and equitable.


## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Date:   October 25, 2017

         /s/Robert R. Hopper
         Robert R. Hopper, Esq. (#208769)
         Matthew L. McMullen, Esq. (#393270)
         **ROBERT R. HOPPER & ASSOCIATES, LLC**
         333 South 7th Street, Suite 2450
         Minneapolis, MN 55402
         T: (612) 455-2199
         F: (612) 455-1689
         E:Robert.hopper@robertrhopper.com
         ***Attorneys for Plaintiffs***